UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROSS T. PETERSON,

                Petitioner,               Case No. 2:06-cv-220

v.                                 Honorable Robert Holmes Bell

BARRY MCLEMORE,

                Respondent.

_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was charged in Muskegon County with one count of child sexually-abusive commercial activity, several counts of uttering and publishing, and one count of larceny in a building. Petitioner was charged as a fourth habitual offender. In the Muskegon County Circuit Court, Petitioner pleaded guilty to two counts of uttering and publishing, and *nolo contendere* to the charge of child sexually-abusive commercial activity. The larceny in a building and the remaining uttering and publishing charges were dismissed. In addition, there was a *Cobbs* plea agreement[1] whereby the trial court would not impose a minimum sentence beyond the midpoint of the guideline range. The trial court sentenced Petitioner to concurrent terms of 4 to 40 years for the uttering and publishing convictions, and 10 to 40 years for the child sexually-abusive commercial activity.

---

[1]*People v. Cobbs*, 505 N.W. 2d 208 (Mich. 1993). In *Cobbs*, the Michigan Supreme Court explained that trial judges may participate in the plea negotiation process by indicating the length of sentence that the judge, on the basis of a preliminary evaluation of the case, believes is appropriate for the charged offense. *Cobbs*, 505 N.W.2d at 212.

In his *pro se* petition, Petitioner raises the following five grounds for relief:

I.     THE SEARCH OF THE DEFENDANT'S HOTEL ROOM VIOLATED HIS FOURTH AMENDMENT RIGHTS AND HAD TRIAL COUNSEL FILED A MOTION TO SUPPRESS IT WOULD HAVE BEEN GRANTED.

II.    DEFENDANT'S STATEMENT WAS OBTAINED IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS AND HAD A MOTION TO SUPPRESS BEEN MADE HIS STATEMENT WOULD HAVE BEEN SUPPRESSED.

III.   TRIAL COUNSEL'S OUTCOME DETERMINATIVE FAILURE TO MOVE TO SUPPRESS DEFENDANT'S STATEMENTS AS WELL AS THE EVIDENCE SEIZED FROM THE HOTEL ROOM DENIED DEFENDANT HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND MADE HIS PLEA INVOLUNTARY.

IV.    DEFENDANT IS ENTITLED TO A RESENTENCING BASED ON *BLAKELY V. WASHINGTON*.

V.     MICHIGAN'S CHILD SEXUALLY ABUSIVE MATERIAL STATUTE IS UNCONSTITUTIONAL AS, IN THE ABSENCE OF A COMPELLING STATE INTEREST, IT IMPINGES UPON THE EXERCISE OF LIBERTY INTERESTS PROTECTED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

Respondent has filed an answer to the petition (docket #6) stating that the grounds should be denied because they have no merit.  Petitioner did not file a reply to Respondent's answer.  Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit.  Accordingly, I recommend that the petition be denied.

**Procedural History**

**A.     Trial Court**

Petitioner was charged in Muskegon County with one count of child sexually-abusive commercial activity, several counts of uttering and publishing, and one count of larceny in a

building.  Petitioner was charged as a fourth habitual offender.  Petitioner's preliminary examination was held on February 14, 2003.

        At the preliminary examination, Sarah Levenburg testified that she was sixteen years old in January 2003, and she was employed at the Lakes Mall.  Her employer informed her that he was receiving three to five telephone calls a day for her from a Thomas Laggans regarding a modeling opportunity. (Preliminary Examination Transcript, (Pre. Ex. Tr., 4, docket #11.) Ms. Levenburg eventually spoke on the telephone to a person representing himself to be Thomas Laggans.  Laggans stated that he would like her to model for Hawk magazine.  (Pre. Ex. Tr., 5.) Laggans offered her $15,000 to be the model of the month.  (Pre. Ex. Tr., 6.)  A lunch meeting at the Hearthstone Motel restaurant was arranged. (Pre. Ex. Tr., 7 and 15.)  Ms. Levenburg was told she could not bring her mother to the lunch, but she could bring a girlfriend. (Pre. Ex. Tr., 7.)  Ms. Levenburg checked Hawk magazine on the internet and concluded "it was pretty trashy with young girls naked and gross."  (Pre. Ex. Tr., 8.)  She contacted her father, and he advised her to report the matter to the police, which she did.  (Pre. Ex. Tr., 9.)

        Detective DeYoung of the Spring Lake Police Department testified that in mid-January 2003, he was assigned to investigate a complaint lodged by Ms. Levenburg.  He asked Ms. Levenburg to telephone Laggans and leave a message to call her on her cell phone.  (Pre. Ex. Tr., 21.)  When Laggans returned the call, Detective DeYoung recorded the call. (Pre. Ex. Tr., 21.) Laggans and Ms. Levenburg made arrangements to meet outside the Hearthstone Motel the following day. (Pre. Ex. Tr., 26.)

        Detective Roger Robillard testified that at the appointed time for the meeting, Detective DeYoung and Detective Jerry Mack stopped and questioned a man outside the Hearthstone Motel.  The man identified himself as Justin Smutz, and acknowledged that he had rented room 16.

(Pre. Ex. Tr., 28.)  Hotel management informed the detectives that the person who had rented room 16 had checked out.  The detectives entered the room and found a camera and several Hawk magazines.  They were then advised by hotel management that the person renting room 16 had actually re-let the room.  Detective Robillard left the premises and obtained a search warrant for room 16. (Pre. Ex. Tr., 28.)  Upon reentering the room, the detectives found a 35 millimeter camera, film and several copies of Hawk magazine spread out on the bed. (Pre. Ex. Tr., 29.)   Detective Robillard observed that Hawk magazine contained photographs of women engaged in lesbian sexual acts. (Pre. Ex. Tr., 31.) Petitioner was identified as the person who earlier had claimed to be Justin Smutz.  Petitioner was taken to the police station, read his Miranda rights, and admitted that he was the person that engaged in telephone conversations with Ms. Levenburg (Pre. Ex. Tr., 35), and that she had informed him that she was sixteen. (Pre. Ex. Tr., 36.)   The trial court found there was probable cause to bind Petitioner over on the count of child sexually-abusive commercial activity. (Pre. Ex. Tr., 43.)

Petitioner pleaded *nolo contendere* to the charge of child sexually-abusive commercial activity.  Prior to entry of the plea, the parties held an in-chambers *Cobbs* hearing. (Plea Hearing Transcript (Pl. Hr. Tr.), June 27, 2003, docket #12, 3.)  The trial judge agreed that he would not set a minimum sentence beyond the mid-point of the guideline's range. (Pl. Hr. Tr., 3.)  The trial judge asked if Petitioner understood the charge of child sexually abusive activity, and Petitioner answered that he did. (Pl. Hr. Tr., 10.)  The trial judge advised Petitioner that the maximum sentence was imprisonment for life, and that there was no mandatory minimum term. (Pl. Hr. Tr., 10.)  Petitioner stated that, other than the concessions in the plea agreement, nothing else had been promised to him to induce him to plead *nolo contendere.*  (Pl. Hr. Tr., 6.)  The trial judge advised Petitioner that he had the right to a trial before a jury or judge, to be presumed innocent until proven

- 4 -

guilty, to confront witnesses against him, and to refrain from testifying on his own behalf.  (Pl. Hr. Tr., 11.)  Petitioner also acknowledged that his attorney had advised him of his rights and all of the elements of the charges.  (Pl. Hr. Tr., 11.)

Petitioner was sentenced on July 29, 2003.  In considering the sentences to be imposed, the trial judge found it significant that Petitioner had ten prior felonies and that, at the time he committed the offense of child sexually-abusive commercial activity, he was a parole absconder.  (Sentencing Transcript (S. Tr.), 5, 7, docket #13.)  The judge sentenced Petitioner to concurrent terms of imprisonment of 10 to 40 years on the count of child sexually-abusive commercial activity and 4 to 40 years on the uttering and publishing counts.

Petitioner filed a post-sentencing motion to withdraw his plea, contending that his attorney had been ineffective for failing to file motions to suppress the items seized from his motel room and his statements made to the police after he was arrested on a parole absconder warrant.  He argued that had his attorney filed such motions, they would have been granted and the charges against him would have been dismissed.   He also moved for resentencing, claiming that he was entitled to resentencing pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004).  A hearing on the motion was held on September 20, 2004 (Motion Hearing Transcript, (Mt. Hr. Tr.), docket #14.)  On October 12, 2004, the trial court denied the motion, reasoning that:

> Assuming, arguendo, that the forgoing position of the defendant is true, the defendant must also establish that, but for his attorney's failure to file the motions, there is a reasonable probability he would not have pleaded guilty or *nolo contendere*.  *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, L.Ed. 2d 203 (1985).  Defendant argues that he has met this requirement because the prosecutor could not or would not have proceeded to trial without the suppressed evidence.
>
> A review of the police report submitted with the defendant's brief and received as an exhibit in support of the *nolo* plea does not support the defendant's position.  Even without the evidence that would be the

- 5 -

> subject of suppression motions, the prosecutor had ample evidence with the testimony of the victims of the charges to proceed to trial and obtain a conviction. Moreover, it is just as likely that the motivation for the pleas was the benefit of a *Cobbs* agreement which guaranteed a sentence at the midpoint of the guideline range in the face of the prosecutor's advocating to resort to the maximum point of the range. Plea transcript p. 3. That's the difference of seven years. It is a substantial benefit. In fact, given the defendant's extensive criminal history, the defendant ran a risk that the court may have been justified in an upward departure. The defendant has failed to establish ineffective assistance of counsel and the motion is DENIED.

(Opinion and Order (Op. and Ord.), October 12, 2004, 2, docket #16.) With regard to his motion for resentencing, the trial court denied the motion, concluding that because Petitioner was given an indeterminate sentence within the sentencing guidelines none of the concerns addressed in *Blakely* were present. (Op. and Ord., 1.) On February 10, 2005, the Michigan Court of Appeals denied Petitioner's application for leave to appeal.

### B.    Direct Appeal

With benefit of counsel, Petitioner appealed as of right to the Michigan Court of Appeals. He raised the same five issues that he has raised in the present petition for habeas corpus relief. On February 10, 2005, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for lack of merit in the grounds presented. (*See* 2/10/2005 Mich. Ct. App. Ord., docket #15.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court, raising the same five grounds that he had raised in the Michigan Court of Appeals. By order entered September 28, 2005, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* 9/28/2005 Mich. Ord., docket #16.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001). A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result;

(3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*,

- 8 -

340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

A. Claims I and II

Petitioner's first claim for relief is that the search of his hotel room violated his Fourth Amendment rights, and his second claim is that statements he made to police while in custody violated his Fifth and Sixth Amendment rights. By pleading *nolo contendere*, Petitioner has waived his right to make these challenges.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A *nolo contendere* plea likewise constitutes a waiver of all non-jurisdictional defects. *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982); *Shanks v. Washington*, 387 F. Supp. 2d 740 (ED Mich. 2005). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty

- 9 -

plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985);  *Haring v. Prosise*, 462 U.S. 306, 320 (1983);  *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.  While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure that such a basis exists.  *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir.1971).

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice

- 10 -

of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976);

*Smith v. O'Grady*, 312 U.S. 329, 334 (1941).   The plea must be entered "voluntarily," i.e., not be

the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of

the defendant" or of state-induced emotions so intense that the defendant was rendered unable to

weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United

States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive

it of the character of a voluntary act, is void.").   The defendant must also understand the

consequences of his plea, including the nature of the constitutional protection he is waiving.

*Henderson*, 426 U.S. at 645 n. 13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of

just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be

accepted unless made voluntarily after proper advice and with full understanding of the

consequences.") (internal quotations and citation omitted).   Finally, the defendant must have

available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68;  *Brady*, 397 U.S. at 756;

*McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).   The advice of competent counsel exists

as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S.

at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the

nature of the offense in sufficient detail to give the accused notice of what he is being asked to

admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be

dissipated by counsel).

    Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given

under oath at the plea hearing, preclude his present assertion that the prosecutor offered him a

specific sentence range in exchange for a plea of guilty.  In *Baker v. United States*, 781 F.2d 85 (6th

Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response

- 11 -

from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Warner v. United* States, 975 F.2d 1207, 1212 (1992).

The record establishes that the trial court followed required procedure when accepting Petitioner's pleas. Petitioner does not claim that he was not competent, and acknowledges that he understood the rights he was waiving by pleading *nolo contendere*. Petitioner stated during the plea hearing that he understood the terms of the plea agreement and the elements the state would have to prove if he went to trial. Petitioner also indicated that he had not been promised anything beyond the terms of the plea agreement and that he had not been subjected to coercion. Petitioner's statements at the plea hearing demonstrate that he voluntarily chose to enter his pleas. Accordingly, claims I and II have no merit.

B. <u>Claim III</u>

Petitioner's third claim for relief is ineffective assistance of counsel based upon his counsel's failure to file motions to suppress his statements to police after he had been taken into custody and the items seized during the search of his hotel room. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. This two part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The

defendant bears the burden of overcoming the presumption that the challenged action might be

considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

were hard to attack).  The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of

professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that

counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error

had no effect on the judgment.  *Id.* at 691.  Moreover, where counsel's performance did not fall

below an objective standard of reasonableness, the court need not reach the question of prejudice.

*See United States v. Foreman*, No. 01-3892, slip op. at 8-9 (6th Cir. March 25, 2003).  A claim of

ineffective assistance of counsel presents a mixed question of law and fact.  Accordingly, the Court

must apply the "unreasonable application" prong of § 2254(d)(1).  *See Barnes v. Elo*, 339 F.3d 496,

501 (6th Cir. 2003).

       The search of the hotel room did not violate Petitioner's Fourth Amendment rights.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures."  U.S. Const., Am. IV.  Warrantless

searches are not unreasonable where law enforcement has been given voluntary consent for the

search from an individual whose property is to be searched, *Schneckloth v. Bustamonte*, 412 U.S.

218 (1973), or from a third party who possesses authority or apparent authority over the premises.

*United States v. Matlock*, 415 U.S. 164, 171 (1974); *Illinois v. Rodriguez*, 497 U.S. 177, 188-89

(1990) (a warrantless search is valid when based upon the consent of a third party whom the police,

at the time of the search reasonably believe has authority over the premises, even though they if fact

do not).    In the present case, the detectives could reasonably rely upon the hotel clerk's representation that the person in room 16 had checked out and upon his consent to search the room. When the hotel clerk later corrected this information, the detectives left the room and obtained a search warrant.  Thus, Petitioner's counsel was not ineffective by failing to file a motion to suppress evidence observed by the detectives' warrantless entry or the items seized during the search pursuant to a warrant.

During the preliminary hearing, Petitioner's counsel did object to allowing Petitioner's statements into evidence.  Counsel acknowledged that Petitioner had been given  his *Miranda*[2] rights before the detectives began questioning him.   The trial court allowed only the statements made by Petitioner before he invoked his rights under *Miranda* to remain silent and to be represented by an attorney.  (Pl. Hr. Tr., 34.)  Although counsel did not file a motion, he raised the issue in an appropriate manner.   This course of action does not amount to ineffective representation. Because Petitioner has not satisfied the *Strickland* test, this claim has no merit.

C.  Claim IV

Petitioner's fourth claim for habeas corpus relief is that he is entitled to resentencing based upon *Blakely v. Washington,* 542 U.S. 296 (2002).  (*See* Pl.-App. Brief, 25.)  He argues that the following three offense variables were not admitted or proven beyond a reasonable doubt: variable 10, exploitation of victim; variable 13, a pattern of criminal activity; and variable 19, threat to the security of a penal institution or court or interference with the administration of justice.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000) , the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to the State of Washington's determinate sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Petitioner's challenge to his sentence, however, has no merit because the *Apprendi-Blakely* line of cases do not apply to Michigan's indeterminate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge. *See People v. Drohan*, 715 N.W.2d 778, 789-82 (Mich. 2006) (citing Mich. Comp. Laws § 769,8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 237 n.7 (Mich. 2003) (citing Mich. Comp. Laws § 769.34(2)). Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not run afoul of *Blakely*. *See Blakely,* 542 U.S. at 304-05, 308-09. Both this Court and the Eastern District of Michigan have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation. See, e.g., *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *McNall v. McKee*, No. 1:06-cv-760, 2006 WL 3456677, at * 2 (W.D. Mich. Nov.30, 2006); *Mays v. Trombley*, No. 2:06-cv-140043, 2006 WL

3104656, at * 3 (E.D. Mich. Oct.31, 2006).  These decisions are in accord with the well-reasoned opinion of the Michigan Supreme Court in *People v. Drohan*, 715 N.W.2d 778 (Mich. 2006).  Consequently, Petitioner's claim that he is entitled to resentencing under *Blakely* lacks merit.

      D.  <u>Claim V</u>

      Petitioner's final claim for habeas corpus relief is that Michigan's child sexually abusive activity statute, MICH. COMP. LAWS § 750.145c,  is unconstitutional because it impinges on the liberty interests of individuals engaging in private sexual activity.   In the opinion of the undersigned, Petitioner has failed to establish that the statute in unconstitutional.

      In *New York v. Ferber*, 458 U.S. 747, 758 (1982), the Supreme Court upheld a New York statute criminalizing the distribution of child pornography.   The Court found that the statute served the purpose of "prevention of sexual exploitation and abuse of children," which was "a government objective of surpassing importance." *Id.* at 757.   Considering the "particular and more compelling interest in prosecuting those who promote the sexual exploitation of children," the Court held that all child pornography is outside the scope of the First Amendment and can be banned.  *Id.* at 761 (general definitions of what may be banned as obscene "do not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children"); *and see Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("given the gravity of the State's interests . . . we find that Ohio may constitutionally proscribe the possession and viewing of child pornography"); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982) (stating that a State's interest in "safeguarding the physical and psychological well-being of a minor" is "compelling").  The *Ferber* holding applies to sexual images of children which may not necessarily be found to be obscene under the standard set forth in *Miller v. California*, 413 U.S. 15 (1973); *and see Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 240 (2002) ("As a general rule, pornography can be banned only if obscene,

- 16 -

but under *Ferber*, pornography showing minors can be proscribed whether or not the images are

obscene . . . .").

There are, however, certain limits on the category of child pornography that is

unprotected by the Constitution.  "As with all legislation in this sensitive area, the conduct to be

prohibited must be adequately defined by the applicable state law, as written or authoritatively

construed."  *Ferber*, 458 U.S. at 764.  In the present case, the relevant statute provides:

> A person who persuades, induces, entices, coerces, causes or knowingly
> allows a child to engage in a child sexually abusive activity for the purpose
> of producing any child sexually abusive material, or a person who arranges
> for, produces, makes, or finances, or a person who attempts or prepares or
> conspires to arrange for, produce, make, or finance any child sexually abusive
> activity or child sexually abusive material is guilty of a felony, punishable by
> imprisonment for not more than 20 years, or a fine of not more than
> $100,000, or both, if that person knows, has reason to know, or should
> reasonably be expected to know that the child is a child, or that person has
> not taken reasonable precautions to determine the age of the child.

MICH. COMP. LAWS § 750.145c(2).  Child sexually abusive material includes a developed or

undeveloped photograph, film, slide, electronic visual image, computer diskette, or sound recording

of a child engaging in a listed sexual act.  MICH. COMP. LAWS § 750.145c(1)(I).  Any person who

is less than 18 and is not emancipated by operation of law is a child within the meaning of the

statute.  MICH. COMP. LAWS § 750.145c(1)(a).   The statute clearly and adequately defines the

prohibited conduct and the persons who are protected by the statute.

The Court in *Ferber* recognized that:

> Suffice it to say that virtually all of the States and the United States have
> passed legislation proscribing the production of or otherwise combating
> "child pornography." The legislative judgment, as well as the judgment found
> in the relevant literature, is that the use of children as subjects of
> pornographic materials is harmful to the physiological, emotional, and mental
> health of the child.  That judgment, we think, easily passes muster under the
> First Amendment.

- 17 -

*Ferber*, 458 U.S. at 758.  Accordingly, it is unquestionable that Michigan has a compelling interest in protecting children from abusive sexually activity, and the statute designed to do so satisfies the requirement set forth in *Ferber*.  The statute is, therefore, not unconstitutional.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   April 30, 2009

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).